# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**CORA M. HAYWOOD,**

        **Plaintiff,**

**v.**                               **Case 2:18-cv-02473-MSN-cgc**

**MEGAN J. BRENNAN,**
**POSTMASTER GENERAL,**

        **Defendant.**

---

### REPORT AND RECOMMENDATION ON
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### ORDER DENYING PLAINTIFF'S MOTION FOR HEARING DATES

---

Before the Court are the following motions: Plaintiff Cora M. Haywood's *pro se* Motion for Summary Judgment (Docket Entry ("D.E." # 50); Defendant Megan J. Brennan, Postmaster General's Motion for Summary Judgment (D.E. #51); and, Plaintiff's *pro se* Motion for Hearing Dates (D.E. #54). The instant motions have been referred to the United States Magistrate Judge pursuant to Administrative Order 2013-05[1]. For the reasons set forth herein, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment be DENIED and that Defendant's Motion for Summary Judgment be GRANTED. It is further ORDERED that Plaintiff's Motion for Hearing Dates be DENIED.

---

[1] The instant case has been referred to the United States Magistrate Judge by Administrative Order pursuant to the Federal Magistrates Act, 28 U.S.C. §§ 631-639. All pretrial matters within the Magistrate Judge's jurisdiction are referred pursuant to 28 U.S.C. § 636(b)(1)(A) for determination, and all other pretrial matters are referred pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) for report and recommendation

# I.      Introduction

### a.  *Plaintiff's Complaint*

On July 11, 2018, Plaintiff filed a *pro se* Complaint[2] alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112, *et seq.*, as amended ("ADA"). (*See* D.E. #1, at PageID 1, ¶ 1).  As to the latter claim, as Plaintiff alleges disability discrimination that occurred during her tenure as a federal employee, it is RECOMMENDED that this claim be construed as arising under the Rehabilitation Act, 29 U.S.C. § 794(1).  *See Plautz v. Potter*, 156 Fed. Appx. 812, 815 (6th Cir. 2005) (noting that the plaintiff, an employee of the United States Postal Service, "incorrectly brought his disability claims under the ADA" and that the "Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability"); *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004) ("The Rehabilitation Act prohibits the United States Postal Service from discriminating against their employees on the basis of a disability.").

Plaintiff's Complaint checked the boxes on the form stating that Defendant failed to accommodate her disability, provided unequal terms and conditions of employment, retaliated against her, and harassed her.  (*See* D.E. #1 at PageID 3, ¶ 6).  When asked to provide the bases for discrimination, Plaintiff checked the boxes for age (over forty) and disability ("permanent job-

---

[2]   Plaintiff's *pro se* pleadings consist of two documents.  The first is a document entitled "Complaint" that was completed on this Court's *pro se* form for discrimination cases.  (*See* D.E. #1).  The second is entitled "Documents in Support of Claim" ("DISC") is actually not evidentiary documents but instead pleading-style allegations.  Construing Plaintiff's filings liberally, the Court will consider these together as her complaint refer and will refer to these collectively as Plaintiff's "Complaint."

related injury lumbar sprain/strain"); Plaintiff did not check the boxes for race, color, gender/sex, religion or national origin.  (*See* D.E. #1 at PageID 4).

Plaintiff further provides the factual basis of various claims in the DISC—her supplementary document filed in support of the Complaint.  (*See*, *infra*, n.1 & D.E. #1-2).  Plaintiff alleges that the Administrative Law Judge ("ALJ") who heard her claims before the EEOC violated her Eighth Amendment rights by "disallow[ing]" certain exhibits, laws, and court cases, by failing to consider certain evidence, deeming certain evidence not to be credible, and ultimately by failing to weigh the evidence in her favor.  (*See* D.E. #1-2 at PageID 9-19).   Plaintiff alleges that she was subjected to a hostile work environment, harassment, and retaliation when her coworker, George Robinson ("Robinson") threw a hand-stamper at her.  (D.E. #1-2 at PageID 11-12).  Plaintiff alleges that the manner in which her Family Medical Leave Act ("FMLA") leave was processed following a snowstorm constitutes retaliation and harassment.   (D.E. #1-2 at PageID 12-13).  Plaintiff alleges that her supervisor retaliated against her, harassed her, and subjected her to a hostile work environment by changing her recorded time in the leave system on an unspecified date.  (*See* D.E. #1-2 at PageID 13-14).   Plaintiff alleges that her supervisor subjected her to a hostile work environment by allowing others more leniency for eating on duty while being unduly strict on her. (*See* D.E. #1-2 at PageID 14-15).

Further, Plaintiff, without specifying the nature of her claim, Plaintiff complains of mistreatment due to her disability.  (*See* D.E. #1-2 at PageID 10-11).  Plaintiff states that Defendant "has demonstrated a pattern of antagonism toward [her] . . . because she has a life-long job injury that prevents her from working on the machines."  (*Id*. at PageID 11).  Plaintiff also states that she was denied "the mega overtime all able-bodied employees were receiving on a regular, ongoing basis and that she was used to prior to the job injury."  (*Id*. at PageID 10-11).

Plaintiff alleges that her claims are bolstered by the fact that one employee, Richard Martin ("Martin"), assaulted a member of management following ongoing harassment and that another supervisor that Plaintiff complained harassed her, SDO Marquest Taylor ("Taylor"), was "fired a few years later for harassment." (*See* D.E. #1-2 at PageID 16). Plaintiff further alleges that other coworkers frequently discussed their complaints but did not complain openly because they feared that they would be subjected to the treatment to which Plaintiff was subjected. (*Id.*)

### b. *Plaintiff's Exhaustion of Administrative Remedies*

In April 2013, Plaintiff requested an EEO counseling session regarding alleged discrimination beginning on March 6, 2013. (*See* Information for Pre-Complaint Counseling, filed at D.E. #51-42, at PageID 747-755). Plaintiff claimed that she had been discriminated against on the basis of disability and age, that she had been subjected to retaliation for previous EEO cases, that she was denied overtime, and that she was harassed or treated in a threatening manner. (*Id.* at PageID 747; Notice of Right to File, filed at D.E. #51-43, at PageID 756). On July 9, 2013, USPS sent Plaintiff a Notice of Right to File stating that it could not resolve her counseling request and that she could elect to file a formal complaint with the National Equal Employment Opportunity Investigative Services Office ("NEEOISO") and including various documents should she elect to pursue that opportunity. (Right to Sue, filed at D.E. #51-43, at PageID 756).

On July 27, 2013, Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Complaint of Discrimination ("EEOC Complaint") with USPS alleging age discrimination, disability discrimination, and retaliation due to prior EEO activity. (EEO Complaint of Discrimination, filed at D.E. # 51-44, PageID 765). Plaintiff states that she was denied overtime due to her physical limitations and that her supervisor would invade her personal space and stand "menacingly" over her "while angry." (*Id.*)

4

On February 20, 2014, USPS accepted ten issues for review in the administrative process:

1. Beginning on March 6, 2013, you have been denied the opportunity to work overtime;

2. On March 7, 2013, your supervisor would not permit you to case mail as you normally would;

3. On April 12, 2013, your supervisor accused you of being counter-productive because you were eating a granola bar while you worked, and she invaded your personal space and stood over you while she was angry;

4. On unspecified date(s), you were denied a reasonable accommodation regarding mail being stacked outside your reach;

5. On September 21, 2013, your supervisor harassed you about one click on the time clock;

6. On an unspecified date, your supervisor tampered with your time;

7. On unspecified dates, you informed upper management of the ill treatment you are constantly subjected to from your front-line manager, but nothing has happened;

8. On October 31, 2013, you were talked to rudely and disrespectfully by management regarding a cookie;

9. On November 6, 2013, you were reprimanded for coming back from last break a few minutes late and subsequently subjected to an investigative interview on November 7, 2013;

10. On unspecified date, you requested twenty-four (24) hours of sick leave but on December 20, 2013, your paystub reflected you were only paid for eight (8) hours.

(Acknowledgement and Acceptance of Amendment to Complaint, filed at D.E. #51-26, at PageID 696-697).

Following a three-day EEOC hearing held from February 12, 2018 until February 14, 2018, the Administrative Law Judge ("ALJ") determined that Plaintiff failed to meet her burden of proving that the Agency discriminated against her, retaliated against her, created a hostile work environment, or harassed her in violation of Title VII, Section 501 of the Rehabilitation Act, 29

U.S.C. § 791, *et seq.*, or the Age Discrimination in Employment Act.   (EEOC Order Entering Judgment, filed at D.E. #51-45 at PageID 768).   Plaintiff appealed the ALJ's decision to the EEOC's Office of Federal Operations ("OFO"); however, the OFO dismissed her appeal when this lawsuit was filed.   (Dismissal of Appeal Order, filed at D.E. #51-46, PageID 870-71; *see also* Notice of Final Action, filed at D.E. #1-1, PageID 7-8).

### c.   *Plaintiff's Motion for Summary Judgment*

On August 27, 2020, Plaintiff filed a one-page Motion for Summary Judgment, which asserts as follows: (1) Defendant does not dispute the facts raised in Plaintiff's Complaint; (2) "Defendant is relying on technicalities such as untimely filings in order to prevail in this case"; and, (3) Defendant "objected" to Plaintiff's counter-offer to settle the case.   (D.E. #50).

Defendant's Response correctly notes that Plaintiff's Motion for Summary Judgment was filed after the August 17, 2020 deadline for dispositive motions.   (D.E. #47).   Further, Defendant correctly argues that Plaintiff's Motion for Summary Judgment does not comply with either Rule 56 of the Federal Rules of Civil Procedure or Local Rule 56.1.   As to Rule 56, a motion for summary judgment must "identify each claim or defense—or the part of the claim or defense—on which summary judgment is sought."   Fed. R. Civ. P. 56(a).   Rule 56 also provides that, when "asserting that a fact cannot be or is genuinely disputed," the moving party must cite "to particular parts of materials in the record."   Fed. R. Civ. P. 56(c)(1)(A).   Local Rule 56.1 provides that a motion for summary judgment "shall be accompanied by a separate, concise statement of the material facts as to which the moving party contends there is no genuine issue for trial."   *Id*.   "Each fact shall be supported by specific citation to the record."   *Id*.   Here, Plaintiff's Motion for Summary Judgment does not contain a statement of undisputed material fact, a memorandum with

legal arguments, or any evidence whatsoever.   Accordingly, it is RECOMMENDED that Plaintiff's Motion for Summary Judgment be DENIED.

### d.   *Defendant's Motion for Summary Judgment*

On August 28, 2020, Defendant filed its Motion for Summary Judgment.[3]  First, Defendant asserts that the Postal Reorganization Act, 39 U.S.C. §§ 1101, *et seq*., ("PRA"), the Civil Service Reform Act, 5 U.S.C. §§ 1101, *et seq*. ("CSRA"), the Rehabilitation Act, 29 U.S.C. § 701, *et seq*. ("Rehabilitation Act"), and Title VII bar Plaintiff's Eighth Amendment claim.  Second, Defendant argues that Plaintiff did not exhaust her administrative remedies for many of her employment discrimination claims.  Third, Defendant asserts that Plaintiff cannot establish a *prima facie* case of discrimination, retaliation, failure-to-accommodate, or harassment.  Defendant additionally filed its Statement of Undisputed Material Fact.  (*See* D.E. #51-2).[4]  Fourth, Defendant argues that, of the remaining claims in her Complaint, Plaintiff cannot establish a *prima facie* case of retaliation or failure to accommodate her disability.

---

[3]  Defendant requested that its dispositive motion deadline be extended until August 28, 2020 due to multiple extenuating circumstances.  (D.E. #48).  Plaintiff consented to the relief requested in Defendant's motion.  After Defendant filed its Motion for Summary Judgment on August 28, 2020, the Magistrate Judge concluded that Defendant's motion for extension was moot.  (D.E. #52).

[4]  Defendant's Statement of Undisputed Material Fact also contains twelve footnotes to the numbered paragraphs.  Local Rule 56.1 provides that "[e]ach fact shall be set forth in a separate, numbered paragraph" but does not contemplate the use of footnotes to further expound upon each numbered paragraph.  Several of these footnotes merely define a term or an acronym; these definitions are helpful and are not disputed by Plaintiff.  Thus, the Court has considered them in this Report and Recommendation.  However, other footnotes contain additional facts and citations to evidence.  With the exception of one footnote where Plaintiff has responded, the Court will not consider these footnotes as they are not allowed under Local Rule 56.1.

### e. *Plaintiff's Response to Defendant's Motion for Summary Judgment*

On September 21, 2020, Plaintiff filed a document entitled "Letter to Attorney from Cora M. Haywood re: discovery affidavit." (D.E. #56). This filing includes two Responses to Defendant's Motion for Summary Judgment (*see* D.E. #56 at PageID 882-897, 898-915), which do not respond to Defendant's Motion for Summary Judgment; instead, they contain extensive further discussion, mostly without citations to evidence, with a few general legal citations interspersed therein.[5] Although Local Rule 56.1(b) does not permit two responses or a response in excess of twenty pages without prior Court approval, for purposes of this Report and Recommendation, Plaintiff's *pro se* responses have been considered as constituting one response (the "Response") to Defendant's Motion for Summary Judgment.[6]

Plaintiff has also filed her Response to Defendant's Statement of Undisputed Material Fact, (*see* D.E. #56 at PageID 916-937), and her exhibits in support thereof (*see* D.E. #56-1, #56-2, #56-3 at PageID 942-1046), which are consecutively paginated and identified in her Table of Contents (*see* PageID 939-941). Plaintiff's Response to Defendant's Statement of Undisputed Material Fact states that various facts are disputed with no citations to evidence whatsoever. These facts have been considered to be undisputed pursuant to Rule 56(c)(1)(A) and Local Rule 56.1(b) without further discussion thereof.

---

[5] Plaintiff cites the following cases in her Responses for general principles of law, such as that discrimination, harassment, retaliation, and a hostile work environment are unlawful: *Faragher v. City of Boca Raton*, 524 U.S. 775, 786 (1998); *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 64-67 (1986); *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591 (5th Cir. 1995), *cert. denied*, 516 U.S. 974 (1995); *Davis v. Tri-State Mack Distributor*, 981 F.2d 340 (8th Cir. 1992); and, 29 C.F.R. 1630.12. The Court will consider these cases, as appropriate, in the analysis of the issue presented in Defendant's Motion.

[6] Although Defendant's Memorandum in Support of Summary Judgment exceeds twenty pages and Defendant's Statement of Undisputed Material Facts exceeds ten pages, Defendant sought prior Court approval to do so, (*see* D.E. #49), which the Court permitted, (*see* D.E. #52).

As to Plaintiff's evidence, there are several issues. First, it is not entirely clear from many of the brief descriptions that Plaintiff has provided in her "Table of Contents" (*see id.*) what each exhibit contains—be it deposition testimony, testimony before the Administrative Law Judge or in other proceedings, or otherwise. For example, many pages of testimony are included, in no particular order, with no references on the face of the exhibit as to the type of proceeding, who is testifying, and who is performing the questioning. Although Plaintiff provides her own description of these exhibits, the Court cannot verify that her descriptions are accurate.

Additionally, Plaintiff has filed multiple unauthenticated photographs and documents which may not be considered for purposes of summary judgment. *See* Exh. 1, filed at D.E. #56-1 at PageID 942; Exhs. 48-52, filed at D.E. #56-2 PageID 9988-992)[7]; Exhs. 55-73, filed at D.E. #56-2 PageID 994-1013); Exhs. 96[8] & 98, filed at PageID 1034, 1036; Fed. R. Civ. P. 56(e).[9] These are not admissible for purposes of a motion for summary judgment. *See Mack v. East Camden & Highland R. Co.*, 297 F. Supp. 2d 1052, 1062 (W.D. Tenn. 2003) (stating that the Court cannot consider documents that are not authenticated under Rule 56(e) of the Federal Rules of Civil

---

[7]  These hand-written statements do not meet the criteria of 28 U.S.C. § 1746(2) to be deemed a declaration that is admissible under Rule 56(c)(1)(A) for purposes of a motion for summary judgment. *See Vanguard Transp. Sys., Inc. v. Volvo Trucks of North America, Inc.*, No. 2:04-cv-889, 2006 WL 2373273, at (S.D. Ohio Aug. 14, 2006) (citing *Pollock v. Pollock*, 154 F.3d 601, 612 n.20 (6th Cir. 1998) (stating that a court may rely upon "unsworn, signed declarations as evidence in deciding motions for summary judgment under Rule 56 if the declaration is: 1) in writing, 2) dated, and 3) verifies that its content is 'true under penalty of perjury").

[8]  Exhibit 96 contains a stamp marking it as "EXHIBIT Pillow 6 1-21-20." Plaintiff does not cite any portions of any proceeding involving "Pillow" in which this document was authenticated and introduced into evidence.

[9]   These unauthenticated documents were cited in the following of Plaintiff's Responses to Defendant's Statement of Undisputed Material Fact: 22, 24, 38, 39, 40, 43, 72, 73, 88, 90, 93, 104, 110, 112.

Procedure)); *see also* Fed. R. Evid. 901-902. Thus, these exhibits have not been considered in this Report and Recommendation.

Further, Plaintiff repeatedly cites evidence that does not in any way dispute Defendant's Statements of Undisputed Material Fact. Specifically, Plaintiff has done so in her Response to the following Statements of Undisputed Material Fact: 11, 19, 21, 22, 33, 36, 37, 38, 40, 42, 43, 47, 49, 50, 53, 56, 57, 59, 63, 65, 72, 88, 90, 93, 113, and 122. These facts have been considered to be undisputed in this Report and Recommendation pursuant to Fed. R. Civ. P. 56(e)(2) and Local Rule 56.1(d). *See Carstar Franchine Sys., Inc. v. Underwood*, No. 18-02149, 2020 WL 1881085, at \*1 (W.D. Tenn. Feb. 21, 2020) ("Because Defendant has not properly addressed Plaintiff's factual assertions, the Court considers Plaintiff's factual assertions as undisputed . . . .") Further, this Report and Recommendation does not consider these non-responsive Responses to Defendant's Statement of Undisputed Material Fact as Additional Statements of Undisputed Material Fact because they were not filed in a manner consistent with Local Rule 56.1(b). Thus, after removing the unauthentic or non-responsive evidence, the only fact in Defendant's Statement of Undisputed Material Fact that will be deemed to be disputed is Statement 28.

### f.   *Defendant's Reply in Support of its Motion for Summary Judgment*

On October 5, 2020, Defendant filed its Reply in Support of its Motion for Summary Judgment. (D.E. #60). Defendant argues that Plaintiff's Response does not demonstrate that summary judgment is inappropriate under the law or that factual disputes exist that would preclude summary judgment. Defendant states that Plaintiff has abandoned her age and disability discrimination claims because she did not substantively address Defendant's legal argument in her Response. Defendant asserts that the Court should not consider Plaintiff's purported Family Medical Leave Act ("FMLA") claim raised in her Response because it is both procedurally

improper and time-barred.  Finally, Defendant argues that Plaintiff did not properly dispute any of the facts raised in Defendant's Statement of Undisputed Material Fact.

### g.  *Plaintiff's Motion for Hearing Dates*

On September 11, 2020, Plaintiff filed a "Motion for Hearing Dates," which the Court will construe as a request for an evidentiary hearing on the Motions for Summary Judgment.  (D.E. #54).  Plaintiff argues that "Defendant does not dispute the fact that the issues raised in Plaintiff's Complaint occurred" and that "Defendant is relying on technicalities such as untimely filings in order to prevail on this case."  These statements are not accurate.  Further, Plaintiff states that Defendant did not agree to her proposed counter-offer in settlement negotiations.  This is also not a basis for an evidentiary hearing on Defendant's Motion for Summary Judgment.

Defendant has filed its Response in Opposition to Plaintiff's Motion for Hearing Dates arguing that an evidentiary hearing would not be helpful or necessary under Local Rule 7.2(d).  As Plaintiff's Motion for Hearing Dates does not state any reason that such a hearing would be helpful or necessary, Plaintiff's Motion for Hearing Dates is DENIED.

## II.     Proposed Findings of Fact

### a.  *Plaintiff's Limited Duty, Modified Assignment*

Plaintiff has worked as a mail processing clerk in the "Automation Unit–OCR" at the Memphis Processing and Distribution Center ("P&DC")[10] since approximately 2002.  Plaintiff did not receive any discipline from the beginning of 2013 until October 1, 2014.

---

[10]  In Footnote 3 to Defendant's Statement of Undisputed Material Fact (*see* D.E. #51-2 at PageID 252), Defendant explains that "P&DC" stands for Processing and Distribution Center.

On or about June 16, 2002, Plaintiff alleges that she suffered a lumbosacral sprain/strain work-related injury. Plaintiff spent approximately one year out of work because of her injury, from approximately April 19, 2003 until April 17, 2004. When Plaintiff returned to work, Plaintiff received a long-term, limited duty assignment in the Automation Unit—OCR on Tour 3, but she did not work on the automation machines. In her limited-duty assignment, Plaintiff manually processed return-to-sender mail that the PARS[11] machines rejected by hand-stamping each piece of mail with an image that points back to the return address, sorting the mail into slots by zip code, and sending it to the 030 Unit to be prepped for dispatch. Casing or sorting the mail allows the mail to proceed to the 030 Unit for those workers to re-handle or prep it so that it can be sent out to delivery officers.

As of August 29, 2013, Plaintiff's primary restrictions were as follows: (1) she was not to lift in excess of ten pounds; (2) she was allowed to stand intermittently for up to two hours; (3) she had a two-to-four hour limitation on walking, kneeling, bending/stooping, twisting, pushing/pulling, and reaching over the shoulder; (4) she required a chair with back support; and, (5) she was not to use machines or automation equipment. Plaintiff believes that approximately four to five people have had limited duty assignments or modified job offers in the PARS section. In 2013, Shirley Nolan ("Nolan") and Annie Love ("Love"), who both had limited duty assignments, worked the waste mail by checking the first-class mail one last time to pull any good mail before the waste mail was thrown away.

---

[11]  In Footnote 2 to Defendant's Statement of Undisputed Material Fact (*see* D.E. #51-2, at PageID 252), Defendant explains that PARS stands for "Postal Automated Redirection System" and is part of the Automation Unit – OCR. Defendant further states that, when customers put in a request to change their address, the PARS machine prints the change of address label directly on the customers' mail.

### b. *Plaintiff's Restrictions Prohibiting Work on the Automation Section's Machines*

Supervisor Teretha Phillips ("Phillips") assigned Plaintiff to case PARS mail that the machine could not read.  Defendant claims that, when Plaintiff worked at the case, she hand-stamped the mail "return to sender" and then sorted it in forty-two different slots (arranged by zip code) after a PARS machine ran the mail and rejected it.[12]  Although Plaintiff occasionally prepared the mail to go through the PARS machine, she stopped it when she said that it hurt her or when doing PARS preparation would exceed her two-hour standing limitation.

### c. *Assistance Given to Plaintiff for Mail Placed Overhead*

USPS maintains a publication for managers regarding the reasonable-accommodation process.  Plaintiff alleges that USPS denied her reasonable accommodation because the mail trays were stacked too high and out of her reach.  Sometimes, mail trays were stacked on top of each other in Plaintiff's workspace, and she struggled to get mail out of them.  Phillips, Plaintiff's Supervisor, asked the clerks not to stack trays so high.  Phillips never told anyone not to pull these trays down for Plaintiff.[13]  Other managers and Phillips also pulled the trays down if Plaintiff asked

---

[12]   Plaintiff states that she disputes the preceding two statements of fact regarding her job assignment and her duties casing mail. (*See* Pl.'s Exhs. 91 at lines 12-19, 94, 95, filed at D.E. #56-2, Page ID 1029, 1032-33).  However, the evidence cited in support of her disputes contains failures addressed generally above.  Specifically, Exhibit 91 is identified by Plaintiff as "Jones Test. Re in error about casing mail." (*See* D.E. #56 at PageID 941). The portion of Exhibit 91 that Plaintiff cites is not testimony but instead is a question being asked of whomever is testifying; neither party is identified. (*See* D.E. #56-2, PageID 1029, at lines 12-19). Exhibits 94 and 95 are identified by Plaintiff as "Pillow Test. Phillips' trained him" and "Pillow Test. Re casing RTS mail." (*See* D.E. #56 at PageID 941).  Although these exhibits appear to be deposition or in-court testimony, the source of this testimony is not identified. (*See* PageID 1032-33).  Further, they do not contain evidence of the dispute that Plaintiff summarizes in her Response to Defendant's Statement of Undisputed Material Fact.  (*Id.*)

[13]  Plaintiff states that she disputes the two proceeding statements of fact regarding Phillips' request that the clerks not stack mail so high and Phillips' alleged instructions not to pull these trays down for Plaintiff.  Plaintiff cites her Exhibit 2, which she has described as the "Westbrook Affidavit"

for help.  Plaintiff was never disciplined for not reaching for or not working on the trays of mail that were placed too high for her to reach.  Over time, the Tour 2 clerks stopped stacking the trays too high for Plaintiff to reach.  (Trial Tr. Vol. 3 at 617:20-23).

### d. Collective Bargaining Restrictions on Overtime

USPS management uses their discretion to determine when mail needs to be worked and whether it needs to be worked on a particular night on overtime or can wait until the next day. Despite her limited-duty status, Plaintiff was allowed to work overtime as long as it complied with both her limited-duty restrictions and the collective bargaining agreement ("CBA").  Plaintiff

---

(*See* D.E. #56-1 at PageID 943); however, the "Affidavit" clearly states that it was made by Plaintiff after her co-worker, Donnell Westbrook, was deceased.  (*Id.*)

Although it is titled as an Affidavit, it is not a notarized statement as required for affidavits in Tennessee. *See Barnes v. SRI Surgical Exp., Inc.*, No. , 2012 WL 1059935, at n.15 (citing Tenn. Notary Public Handbook (Mar. 2006 ed.)); *see also* Tenn. Notary Public Handbook (June 2016 ed.),  available  at  http://www.ctas.tennessee.edu/sites/default/files/Notary%20Public%20-%202016%20Update_0.pdf, and last accessed on October 21, 2020 (defining an affidavit as a "sworn statement made by a person called an affiant" who "makes oath before a notary public that the facts contained in the affidavit are true.").  Instead, it constitutes a declaration pursuant to 28 U.S.C. § 1746(2), which Plaintiff cites therein, as it does state that Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Rule 56 permits that summary judgment motions be supported by declaration, Fed. R. Civ. P. 56(c)(1)(A), *see also, supra*, n.5; however, it is well-established that a court may not consider hearsay when deciding a motion for summary judgment, *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007); *Jacklyn Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).  Here, Plaintiff seeks to dispute Defendant's fact with her declaration stating that Phillips told Westbrook not to take the trays down for Plaintiff, which Westbrook then told her.  It is RECOMMENDED that Rules 801 and 805 of the Federal Rules of Civil Procedure necessitate the conclusion that the declaration statements relied upon by Plaintiff contain double hearsay. Further, it is the responsibility of the proponent of the evidence that "has the burden of finding the exception that permits the hearsay to come into evidence."  *Robert Huston v. U.G.N., Inc.*, No. 3:18-cv-62, 2020 WL 2794540, at *1 (S.D. Ohio May 29, 2020).  No such burden has been attempted or met here.  Accordingly, it is RECOMMENDED that this declaration not be considered as admissible evidence for purposes of this motion.

could not perform overtime with AMP mail[14] because it required constant standing.  Plaintiff alleges that she missed out on mandatory overtime in the Automation Unit—OCR approximately six or seven times in 2013 and once or twice in the 030 Unit—a different area from the Automation Unit—OCR.

When Phillips calls mandatory overtime in the Automation Unit—OCR, that overtime work is usually limited to the people who work on the automation machines.  Phillips prioritizes assigning overtime to those working on the PARS machine because PARS machines take a first-pass at sorting mail, and Plaintiff's work hand-stamping return-to-sender mail (like waste mail, culling mail, and PARS prep) is a second-pass task because it occurs after the mail has already passed through the PARS machines once and been rejected.

In or about the spring of 2013, the Memphis facility where Plaintiff worked received additional mail due to plant consolidations, which caused more overtime in all areas of the facility. According to the applicable CBA provisions, if the 030 Unit needed to work overtime, that unit's Overtime Desired List ("ODL") had to be exhausted before employees outside that unit could be assigned overtime in the 030 Unit.  Defendant states that the 030 Unit requires workers to stand and reach over their shoulders to hand-sort the first-class letters into mail cases.  (*See* Trial Tr. Vol. 3 at 608:1-7, filed at D.E. #51-5, PageID 372; Def.'s Mot. for Summ. J., Exh. 4 ("Pl.'s Fed. Dep.") at 56:6-16, filed at D.E. #51-6, PageID 455).  However, Plaintiff asserts that every case in the 030 unit has "rest bars" where some employees could sit.  (*See* D.E. #56-2 at PageID 1030).[15]

---

[14]  Defendant's cited exhibit states that AMP mail stands for "Area Mail Processing" and includes "zip range 382, 383, 724, and 388."  (Trial Tr. Vol. 3 at 646:10-647:3).

[15]  Exhibit 92 is identified by Plaintiff as "Jones Test. re rest bars."  (*See* D.E. #56-2 at PageID 1030).  Although this exhibit appears to be deposition or in-court testimony, the source of this testimony is not identified.  (*See id.*).

In or about March 2013, Plaintiff asked Matt Cummins ("Cummins") (the acting Manager on Tour 1, the tour after Plaintiff's tour) and Vivian Mosby ("Mosby") (a Supervisor on Tour 1) for overtime in the 030 Unit, where first-class letters are cased.  When Plaintiff worked overtime in the 030 Unit casing manual letters on Tour 1, Cummins and Mosby "were not really going by the contract or anything"; they "were just looking for bodies."  Plaintiff initially received some after-tour overtime casing letters in the 030 Unit.  Plaintiff was on the tour-wide, out-of-section ODL so that she would be offered overtime outside the Automation Unit—OCR.  Because Plaintiff reached the limits of her work restrictions for standing and reaching-over-the-shoulder work during her regular hours on Tour 2, Plaintiff's after-hours overtime work in the 030 Unit exceeded her medical restrictions.

As such, when Phillips learned that Plaintiff was working overtime in the 030 Unit and exceeding her restrictions, she told Cummins and Mosby to stop assigning Plaintiff overtime work in the 030 Unit.  After Phillips told Plaintiff she could not work overtime in the 030 Unit because she would exceed her limited-duty medical restrictions, Plaintiff changed how she cased mail to a less-efficient method (in which she handled mail twice instead of once) so that she could work 030 Unit overtime without exceeding her medical restrictions.  Although Phillips told Plaintiff not to case her mail with this more time-consuming and less-productive method, Plaintiff never returned to casing her mail to the method she had been instructed to use.[16]

---

[16] Plaintiff cites Defendant's Exhibit 8 (filed at D.E. #51-10), which Defendant has identified as "Handbook Policy Regarding How to Case Mail."  The document itself is titled "Coordinating Eye and Hand Movements at the Case."  (*Id.*)  It contains instructions on how to properly case mail; however, it does not contain evidence of any dispute as to what Phillips told Plaintiff about returning to a proper method of doing so or whether Plaintiff complied.

Plaintiff also brought in a new CA-17 form that changed her restrictions in another attempt to work overtime in the 030 Unit.[17]  By the time Plaintiff turned in her new CA-17 form, the Union had complained that the 030 Unit's ODL was not being maximized and that out-of-section overtime for employees such as Plaintiff should not be used.[18]  Thus, by enforcing the CBA, the Union contributed to Plaintiff not receiving additional overtime in the 030 Unit.

Additionally, overtime reduced plant-wide because the mail volume leveled out.[19] Plaintiff admits that the 030 Unit's overtime should have been awarded based on the section-specific ODL before turning to the tour-wide ODL.  Plaintiff did not identify any other employees who received overtime in hand-stamping or casing PARS mail on Tour 3 to which she believes she was entitled.  Plaintiff does not know whether any overtime was available for automation for non-machine work from the beginning of 2013 until October 1, 2014.

Phillips occasionally assigned Plaintiff overtime in her own section—the PARS section—as needed and within Plaintiff's medical limitations.  Plaintiff worked very little after-tour 030

---

[17]   Plaintiff cites Defendant's Exhibit 9 (filed at D.E. #51-11) to dispute this fact.  Defendant describes this document as a "Duty Status Report."  It is not identified as CA-17 (or otherwise identified).  It contains various activity limitations due to Plaintiff's diagnosis of spinal stenosis, and it is dated August 29, 2013.  This document provides evidence of her restrictions as of that date but does not provide evidence of what changes were made in an attempt to work overtime.

[18]   Plaintiff's stated dispute does not reference Union complaints whatsoever.  *See* Pl.'s Resp. to Def.'s Statement of Undisputed Material Fact ¶ 38 (filed at D.E. #56, PageID 924), Exh. 75 (filed at D.E. #56-2, PageID 1015), Exh. 89 (filed at D.E. #1027), and Exh. 90 (filed at D.E. #56-2, PageID 1028).

[19]   Plaintiff cites Exhibit 85, which she describes as "Jones Test. re AMP mail."  (*See* D.E. #56 at PageID 941).  Exhibit 85 appears to be deposition or in-court testimony, although the parties are not identified.  (Pl.'s Exh. 85, filed at D.E. #56-2, PageID 1025).  Exhibit 85 states that there is "no overtime" in the time "leading up to Easter" and that there is a "spike back up" in the fall." (*Id.*)  It further states that "there are different intervals throughout the year where volume increases and decreases."  (*Id.*)  However, as Defendant does not provide a time period for this particular plant-wide overtime reduction, it is impossible to determine whether Plaintiff's cited evidence creates a material dispute of fact.

Unit overtime even before Phillips' conversations with Cummins and Mosby about her restrictions. Moreover, Cummins and Mosby did not know about Plaintiff's restrictions before Phillips told them and did not know that they were exceeding them. Phillips did not make overtime decisions based on any of Plaintiff's alleged protected characteristics. Some employees in Phillips' unit did not have any overtime hours from March 6, 2013 until September 6, 2013 while others did, including Plaintiff.

### e.   *Restrictions on Eating While Working*

The plant's rules—signed by the plant manager—prohibit employees from having food on the workroom floor while working. Defendants assert that supervisors regularly enforce this rule when they see people eating on the floor. Plaintiff asserts that employees had been allowed to eat on the workroom floor at certain times but not others.[20]

One night, Phillips saw Plaintiff eating a granola bar at her case while working and asked her to put her food away. Phillips was not close to Plaintiff and did not raise her voice. Plaintiff continued eating the granola bar even after Phillips told her not to. While Plaintiff was eating the granola bar, she could not use both hands to simultaneously stamp mail with one hand and sort it with another because doing so would have slowed her work and been counter-productive. Plaintiff did not receive any discipline for the granola-bar incident, and Phillips appropriately addressed her about eating the granola bar on the floor.

---

[20]   Plaintiff cites Exhibits 81 and 82 (filed at D.E. #56-2, PageID 1021-1022) in dispute of this fact. These exhibits are identified by Plaintiff as "Jones Test. re allowed foods" and "Jones Test. re food on desk." (filed at D.E. #56 at PageID 941). These exhibits appear to contain either deposition or in-court testimony but the parties are not identified. Further, although they generally discuss when food had previously been allowed (such as "small" holiday candies) versus when food had been disallowed (entire meals, such as a "plate of spaghetti"), they also address how a policy had to be instituted to prevent extensive eating on duty. However, they do not address directly whether the policy, once instituted, was regularly enforced.

Robinson, one of Plaintiff's co-workers, brought pizza to work and put it in the breakroom for the employees.  The employees enjoyed the pizza in the break room, not the work area.

On or about October 31, 2013, because of Halloween, Phillips briefly allowed her supervisees to eat bite-sized candy at Phillips' desk on the floor and put a bowl of bite-sized candy on her desk.  During the night, Phillips saw Plaintiff eating cookies at her case on the work floor and instructed her to stop.  Plaintiff was working counterproductively similar to the granola-bar incident.  The bag of cookies was not included in Phillips' limited Halloween exception for bite-sized candy, which the employees could pop quickly into their mouths at the supervisor's desk. Phillips told Plaintiff to stop eating cookies from the baggie and reminded her about the rule about food on the workroom floor.  Plaintiff never said that she needed to eat a cookie for a medical reason, and she never provided medical documentation at any time stating that she needed to eat periodically for a medical reason.  Plaintiff was never disciplined for eating cookies on the floor on Halloween.  Phillips handled situations in a similar manner when she caught other employees with food on the workroom floor.[21]

### f.  Recording Time

As part of the Union-Negotiated Memorandum of Understanding, employees received up to 8 clicks—5 minutes after their start time—without a penalty because of potential congestion in the line to the time clock.  Plaintiff's tour begins at 16:00.  Plaintiff routinely clocks in close to 16:08, even when there is no congestion at the time clock.  Plaintiff believes that the eight extra clicks are her right to take, so she takes them.

---

[21]  Although Plaintiff cites Exhibits 81 and 82 (filed at D.E. #56-2, PageID 1021-1022) to dispute this fact, these exhibits support the fact that a consistent policy was developed prohibiting food on the workroom floor; however, as the parties to this testimony are not identified, it is unclear if Phillips was the person handling situations in this manner and if she handled them in a similar manner with respect to each employee.

On or about September 21, 2013, Plaintiff wrote 16:07 as her arrival time on her manual time card—Form 1260—which she filled out because her time card was not on the rack. Because Plaintiff completed a Form 1260 instead of swiping the time clock with her automated time card, Phillips was required to manually enter Plaintiff's time on the computer. Because Phillips was standing by the time clock when Plaintiff arrived, Phillips knew that Plaintiff arrived at 16:08, so Phillips entered that time into the computer.[22] Phillips' entry of 16:08 into the computer did not affect Plaintiff's pay.[23] Phillips received no discipline for arriving at 16:07 or writing 16:08 on Form 1260. Phillips addressed other employees' attendance, lateness, or unscheduled sick leave similarly to how she treated Plaintiff.

### g.   *Breaks from Work*

In an investigative interview, management meets with employees about their alleged infractions so that the employees can provide information about their alleged infractions before management decides whether to issue discipline. After Plaintiff improperly returned late from her break on or about November 8, 2013, Phillips conducted an investigative interview with Plaintiff. Phillips told Plaintiff that she had noticed her returning 20-40 minutes late from her break on two separate occasions. During this November 8 interview, Plaintiff admitted that she returned late from her break that night. Although Plaintiff thought that clocks in different areas showed different times of day, Phillips told Plaintiff to use only the clock in their location. After this meeting, Phillips created a scheduled break time for Plaintiff so that she could accurately monitor Plaintiff's

---

[22]  Plaintiff cites Exhibits 31, 32, 33, 34, 46, 72, and 96 to dispute this fact. Although these exhibits generally discuss where a supervisor could or could not see the time clock, they do not address whether Phillips was able to do so on this particular night.

[23]  Plaintiff cites Exhibits 57, 58, 59, and 72 to dispute this fact. Exhibits 57-59 include various recordings of Plaintiff's time on September 21, 2013; however, they do not appear to reference any changes to her pay. Further, Exhibit 72 does not address whether Phillips' entry affected Plaintiff's pay whatsoever.

breaks.  Phillips did not discipline Plaintiff for exceeding her break time.  Nevertheless, Plaintiff alleges that this investigative hearing was harassing.

### h.  Sick Leave and FMLA Leave During Winter Storm

In or about December 6-9, 2013, an ice storm occurred in Memphis.  The plant manager anticipated that many employees would call in sick on those days and, as such, he required those employees to provide medical documentation showing that they were actually sick to be paid sick leave.  Plaintiff was among the employees who called in sick from December 6-9, stating that her absence was due to a "job injury flare-up" caused by being "subjected to a/c in a work unit consistently."  Because the facility had put all employees who called in during the winter storm in a "deems-desirable status," Plaintiff's time for those three days was listed as LWOP (leave without pay) instead of paid sick leave until she brought in documentation.  After Plaintiff provided documentation supporting that she was actually sick for the three days, Phillips adjusted Plaintiff's LWOP to paid sick leave so that she would be paid for those three days.[24]  Ultimately, Plaintiff was paid for all three days.  Phillips has made similar pay adjustments under similar circumstances for other employees.

---

[24]  Plaintiff cites Exhibits 1, 7, and 8 to dispute this fact.  None of these exhibits dispute whether Plaintiff's LWOP was adjusted to paid sick leave following obtaining documentation.  Instead, she summarizes her dispute as follows:  "Plaintiff called in under FMLA sick leave which should never have fallen into the category of 'Deems Desirable.'  Plaintiff's documentation was already on file [and] therefore she didn't need to bring any more documentation."  (Pl.'s Resp. to Def.'s Statement of Undisputed Material Fact ¶ 88).

Exhibits 7 and 8 contain deposition or in-court testimony, but the parties are not identified.  The unidentified testifying witness states that the FMLA only "prevents management from taking action against the employee for the absence"; it does not affect whether the employee is paid for leave.  Further, the unidentified witness states that taking FMLA leave in this circumstance still required medical documentation.  Ultimately, "if they have an FMLA-covered illness and if it coincides," then they "have to adhere to the FMLA portion of that illness and not question it as long as they have their documentation on file."

### i.   *Plaintiff's Discrimination Claims*

The alleged discriminatory acts included in this case span from March 6, 2013 to September 2013.  Although Plaintiff alleges religious discrimination and religious harassment, she agrees that she did not check the box for religious discrimination on the Complaint and that she did not allege it at the administrative stage of this lawsuit.  Phillips is the only manager or supervisor who Plaintiff alleges discriminated against her.[25]   USPS has policies prohibiting discrimination, harassment, and retaliation.

Phillips, who was forty-eight years old in 2013, is approximately ten years younger than Plaintiff, who was fifty-eight years old in 2013.   Plaintiff has no direct evidence of age discrimination.  Plaintiff believes that Phillips discriminated against her because of her age and because she cannot work on the machines due to her restrictions and because Plaintiff could not work fast enough for her.  While Plaintiff asserts that Phillips did not allow her to work overtime because of her age, Plaintiff cannot identify any specific instance of overtime she did not receive because of her age.  Plaintiff cannot identify any substantially younger coworkers who Phillips allegedly treated more favorably than her.  Phillips was not aware of Plaintiff's age.  Plaintiff believes that Phillips discriminated against her because of Plaintiff's age for the following reasons: Phillips is younger than Plaintiff; Plaintiff had a "gut feeling" that she looks like an employee at the bulk-mail center with whom Phillips' husband had a baby; and Phillips was jealous of Plaintiff

---

[25]   Plaintiff states that she disputes this fact because, by naming Brennan as the Defendant, her lawsuit encompasses "any and all Management official that aided, abetted, condoned, upheld, or hand in any other form or fashion to do with SDO Phillips harassing and creating a hostile work environment . . . ."  (Pl.'s Resp. to Def.'s Statement of Undisputed Material Fact ¶ 93).  Plaintiff cites her Exhibits 60-71 and 78, lines 10-13.  The majority of the complaints regarding Phillips; however, these exhibits also mention the following individuals: Robinson, JoAnn Jefferson ("Jefferson"), Mechelle Brown ("Brown"), who Phillips had directed to "spy on" and "watch" her; and David O. Jones ("Jones"), who Plaintiff states does not want to "put an end to Phillips' harassing behavior" and "condones" it.

when others told Plaintiff she looked nice.  Nothing about either the situations involving Phillips' husband's child's mother or Plaintiff's alleged failure to save Phillips a plate of food at the Christmas party impacted Phillips feelings towards Plaintiff.

Plaintiff alleges that she was subjected to religious, disability-related, and retaliatory harassment.  Plaintiff did not complain to Phillips about age discrimination or alleged harassment by Taylor.  Plaintiff never supplemented her EEO complaint regarding any alleged harassment by Taylor.  USPS investigated Plaintiff's complaints against Taylor in 2009, when she made the complaint.

Plaintiff's assertion that Phillips asked Robinson to "stalk her" and "film her every move" was not accepted during the administrative process.  Plaintiff believes that Phillips instructed several employees to watch her, but Phillips denied doing so when Plaintiff asked her about it. Phillips never instructed anyone to watch Plaintiff and report back to her what Plaintiff did throughout the night.  Phillips investigated Plaintiff's allegation that Robinson threw a hand-stamp at her, and she could not substantiate the allegation.  Plaintiff asserts that Phillips harassed her by not disciplining him.  When Plaintiff complained about Phillips' alleged harassment, the USPS investigated her allegations and could not substantiate them.  Plaintiff asserts that Phillips' correction of her clock-in time to 16:08 instead of 16:07 was harassing despite the fact that she did not lose any pay.

Plaintiff believes that Phillips discriminated against her because of Plaintiff's alleged disability because Phillips works hard and because of the fact that Plaintiff has medical restrictions. Plaintiff alleges that Phillips discriminated against her because of her disability because Phillips asked only those people who could work on the machines to work overtime in the Automation Unit—OCR.  Plaintiff alleges that the USPS discriminated against her because of her disability

23

because they ignored letters she sent to high-level postal officials.  At her deposition, Plaintiff could not articulate a reason why Phillips' decision to exercise her discretion to use only machine-capable workers for overtime was discriminatory.

Plaintiff believes that Phillips retaliated against her because Plaintiff "filed things against her."  Since 2005, Plaintiff has filed nine other EEO Complaints against USPS, and the most recent investigation predating this case's EEO Complaint ended January 31, 2012.  Phillips was aware of only one of these instances of alleged prior protected activity.  Plaintiff alleges that she engaged in protected activity by sending emails to Joshua Colin ("Colin") and Jones.  Plaintiff believes that Phillips retaliated against her by requiring her to provide documentation that Plaintiff was sick when she took three days off during the December 2013 snowstorm.[26]   Plaintiff alleges that Phillips retaliated against her by not giving her paid bereavement leave when her father died in 2019, but Plaintiff did not raise this issue at the administrative stage.

### III.   PROPOSED ANALYSIS

#### a.   Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Although hearsay evidence may not be considered on a motion for summary judgment, *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form

---

[26]   Defendant's Statement of Undisputed Material Fact states that Plaintiff alleges that Phillips retaliated against her by raising her voice at her.  (Def.'s SUMF ¶ 123).  The cited portion of Plaintiff's deposition does not contain that assertion.  (*See* Pl.'s Fed. Dep. at 73:14-19, filed at D.E. #51-6).

that would be admissible at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Thaddeus-X v. Blatter*, 175 F.3d 378, 400 (6th Cir. 1999). The evidence and justifiable inferences based on facts must be viewed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001).

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### b.   *Evidence Pertaining to Allegations Not Plead in Complaint*

At the outset, the Court must address a threshold issue—namely, the voluminous evidence that has been brought forth for purposes of the motion for summary judgment that raises factual issues not pled in the Complaint.[27] To provide sufficient context, the Court begins by going back a step further to the administrative stage of this case. Therein, Plaintiff raised a broader scope of factual allegations, which USPS formally accepted as ten issues for administrative review. When Plaintiff elected to pursue her claims in this Court, she did so by pleading a narrower set of factual allegations in her Complaint. As discovery has proceeded, Plaintiff has both harkened back both to unpled administrative claims and raised entirely new unpled claims. Defendant has

---

[27]   In the Proposed Findings of Fact in this Report and Recommendation, the Court has included all disputed and undisputed material facts, including evidence regarding claims not plead in the Complaint; however, it is also recommended that the analysis of the instant motion be confined to the claims pled in the Complaint.

comprehensively attacked the full breadth of the claims that Plaintiff has entertained pursuing during the discovery phase of this case, including those that she seeks to revisit from her administrative proceedings or visit at summary judgment for the first time altogether.  Plaintiff, however, may not effectively ignore the purpose of filing a complaint and proceed in this manner.

The Sixth Circuit explains why this is improper in *Tucker v. Union of Needletrades, Indus. and Textile* Employees, 407 F.3d 784, 787-89 (6th Cir. 2005).  At the outset of a case, Rule 8 of the Federal Rules of Civil Procedure requires "that the complaint give the defendant fair notice of the claim *and its supporting facts*."  *E.E.O.C. v. J. H. Routh Packing Co.*, 346 F.3d 850, 854 (6th Cir. 2001) (citing Fed. R. Civ. P. 8).  The scope of discovery flows from the Complaint, "[a]nd if a plaintiff decides to advance a new claim as a result of such discovery, liberal amendment of the complaint is provided for by Rule 15(a) of the Federal Rules of Civil Procedure . . . ."  *Tucker*, 407 F.3d at 788; however, should the plaintiff determine not to seek an amendment, she is constrained by the claims in her original pleading for purposes of summary judgment.  *Id.*  "To permit a plaintiff to do otherwise would subject defendants to unfair surprise" and deprive them of their opportunity to conduct discovery on the full scope of Plaintiff's allegations.  *Id*. (citing *Guiffre v. Local Lodge No. 1124*, No. 90-3540, 1991 WL 135576, at *5 (6th Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to summary judgment because, "[h]aving received no notice of them, the defendants had no opportunity to investigate them when they conducted their own discovery"); *see also Lally v. BP Products North America, Inc.*, 615 F. Supp. 2d 654 (N.D. Ohio 2009) (ignoring disputes of fact raised at the summary judgment stage that were related to parcels of land about which there were no allegations in the complaint).

Thus, it is RECOMMENDED that the instant motion for summary judgment be limited to determining if a genuine dispute of material fact exists as to the claims and supporting factual

allegations raised in her pleading.  They are restated here for purposes of clarity:  (1) whether the ALJ violated Plaintiff's Eighth Amendment rights; (2) whether Plaintiff was subjected to unlawful retaliation in violation of Title VII when Robinson threw a hand-stamper at her, when her FMLA leave processing was delayed, and/or when Phillips altered her recorded time in the leave system; (3) whether Plaintiff was subjected to a hostile work environment—due to her age, disability, or in retaliation for prior EEO activity—based upon Robinson throwing a hand-stamper at her, her FMLA leave processing being delayed due to a snowstorm, Phillips altering her recorded time in the leave system, other employees being given more leniency for eating on duty while she was subjected to stricter requirements, and the denial of overtime leave due to her injury.[28]

### c.   *Eighth Amendment*

Plaintiff argues that the ALJ violated her Eighth Amendment rights to the United States Constitution.  Plaintiff asserts that the ALJ violated her Eighth Amendment rights by "disallow[ing]" certain exhibits, laws, and court cases, by failing to consider certain evidence, deeming certain evidence not to be credible, and ultimately by failing to weigh the evidence in her favor.  As such, Plaintiff alleges that the ALJ denied her the right to a fair trial, which she believes constitutes "cruel and inhumane" treatment.  Plaintiff's Response does not provide any legal support for her position that the ALJ's evidentiary and legal determinations implicated her Eighth Amendment rights, and the Court is aware of none.  Accordingly, it is RECOMMENDED that Plaintiff's Eighth Amendment claim fails as a matter of law.

---

[28]   Plaintiff's Complaint also alleges that she suffered "harassment" due to Robinson's throwing of the hand-stamper, the FMLA leave-processing delay, and the adjustment of her recorded time. As "harassment" is an element of both retaliation and hostile-work-environment claims, the Court has included the "harassment" allegations in analyzing both.

### d.  *Title VII Retaliation / Harassment*

Plaintiff alleges that she was subjected to retaliation in violation of Title VII.  Title VII prohibits retaliation against an employee because that employee has engaged in conduct protected by Title VII.  *See* 42 U.S.C. § 2000e-3(a).  A Title VII retaliation claim can be established either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support such an inference.  *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543 (6th Cir. 2008) (citation omitted).  "Direct evidence is that evidence which, if believed, requires no inferences to conclude that unlawful retaliation was a motivating factor in the employer's action." *Imwalle*, 515 F.3d at 543-44 (citing *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003); *Christopher v. Stouder Mem'l Hosp.*, 936 F.2d 870, 879 (6th Cir. 1991)).  Here, there is no direct evidence that Plaintiff suffered retaliation for any protected activity.  Thus, Plaintiff's claim must be addressed under the framework set forth in  *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).

Under *McDonnell Douglas*, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation, which requires that she demonstrate as follows: (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to plaintiff, or the plaintiff was subjected to severe or pervasive retaliatory harassment by a supervisor; and, (4) a causal connection existed between the protected activity and the materially adverse action or harassment.  *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (citations omitted); *Willey v. Slater*, 20 Fed. Appx. 404, 405-06 (6th Cir. 2001) (citing *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).  If Plaintiff succeeds in making out the elements of a *prima facie* case, the burden of production of evidence shifts to the employer to articulate some legitimate, non-discriminatory

reason for its actions.  *Id*.  If the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the defendant's proffered reason was not the true reason for the employment decision.  *Id*. (citing *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).

For purposes of this Motion, Defendant does not contest that Plaintiff previously engaged in activity protected by Title VII when she filed prior EEO Complaints or that Phillips was aware of one of those instances of protected activity.

### i. *Materially Adverse Action*

Here, the third element of the prima facie case is in dispute.  Thus, the Court must first determine whether any of the treatment Plaintiff alleges constitutes a materially adverse action. Plaintiff's burden of establishing a materially adverse employment action is "'less onerous in the retaliation context than in the anti-discrimination context.'"  *Laster*, 746 F.3d at 730 (quoting *Michael v. Caterpillar Financial Servs. Corp.*, 496 F.3d 584, 595-96 (6th Cir. 2007).  In the context of a Title VII retaliation claim, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  *Laster*, 746 F.3d at 731-32 (quoting *Burlington Northern & Santa Fe Railway, Co. v. Sheila White*, 548 U.S. 53, 68 (2006).  "In analyzing the significance of any given act of retaliation, context matters. The real social impact of workplace behavior often depends upon a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed."  *Laster*, 746 F.3d at 731 (quoting *Burlington Northern*, 548 U.S. at 69).

With respect to Plaintiff's allegation that she suffered retaliation because her co-worker, Robinson, threw a hand-stamper at her, Plaintiff's Complaint alleges that he did so because he

believed Plaintiff "left the stamper on his table and became angry about it being there." (D.E. #1-2 at PageID 12). As such, she does not plead that Robinson's action was taken in retaliation for any protected activity. Further, in the Sixth Circuit, an employer will only be liable for a coworker's actions under the following circumstances: (1) the coworker's retaliatory conduct is sufficiently severe so as to dissuade a reasonable worker from making a charge of discrimination; (2) supervisors or members of management have actual or constructive knowledge of the coworker's retaliatory behavior; and, (3) supervisors or members of management have condoned, tolerated, or encouraged the acts of retaliation, or have responded to the plaintiff's complaints so inadequately that the response manifests indifference or unreasonableness under the circumstances. *Laster*, 746 F.3d at 732 (citing *Hawkins v. Anheuser-Busch, Inc*., 517 F.3d 321, 347 (6th Cir. 2008). Here, it is undisputed that Plaintiff reported the incident, that Phillips investigated Plaintiff's allegation that Robinson threw a hand-stamper at her, and that Phillips could not substantiate the allegation. Accordingly, it is RECOMMENDED that Plaintiff did not suffer a materially adverse action due to Robinson's conduct.

Next, Plaintiff alleges that she suffered a materially adverse action when she was placed on "deems desirable" leave status (requiring documentation of illness) rather than being automatically placed on FMLA leave (based upon prior documentation of qualifying medical condition) during the December 2013 winter snowstorm. Upon review, Plaintiff has not cited any authority for the proposition that being required to provide additional documentation of illness constitutes a materially adverse employment action. She has also not cited any authority for the proposition that a brief delay in determining her appropriate leave status, which was consistent with plant-wide policy regarding the winter storm, constitutes a materially adverse action; however, courts in the discrimination context have held that a delay in receiving pay does not constitute a materially

adverse action, *see Plautz*, 156 Fed. App'x at 817-18 (6th Cir. 2005) (reasoning that the postponement of one day's pay for one pay period had only a negligible impact on the employee's income and does not rise to the level of an adverse employment action); *Lynda Reddy v. JP Morgan Chase Bank, N.A.*, Nos. 2:09-cv-1152, 2:11-cv-879, 2013 WL 3147949, at *1 (finding that a pay error relating to one day of pay was not an actionable adverse employment action); *Robbie J. Ponder v. The Martin-Brower Co., LLC*, No. 3:07-0789, 2008 WL 3852252, at *11 (M.D. Tenn. Aug. 14, 2008) (reasoning that the plaintiff had not "shown that the short delay in receiving her pay was an adverse employment action" as she was "never suspended" and "was paid for her time shortly after . . . ."); *McGinnis v. U.S. Air Force*, 266 F. Supp. 2d 748, 771 (S.D. Ohio 2003) (concluding that a temporary loss in pay due to delayed processing of a promotion and pay increase did not constitute an adverse employment action because the plaintiff received retroactive pay once the promotion was processed).[29]   Accordingly, it is RECOMMENDED that Plaintiff did not suffer a materially adverse action when she was required to provide additional documentation to properly classify her leave.

Finally, Plaintiff alleges that she suffered a materially adverse action when Phillips adjusted her recorded time on duty on September 21, 2013.  Here, it is undisputed that Plaintiff's supervisor, Phillips, entered the time that she witnessed Plaintiff begin her tour into the system (despite Plaintiff writing that she arrived one minute earlier on her timecard).  It is further undisputed that

---

[29]   These cases involving pay errors, processing delays, or other administrative delays are distinguishable from cases involving a *suspension* without pay, which some courts have determined constitutes a materially adverse action.  *See Tommy D. Garren v. CVS Rx Servs., Inc.*, No. 3:17-cv-149, 2020 WL 5097154, at *11 (E.D. Tenn. Aug. 28, 2020); *White v. Burlington Northern & Santa Fe Railway Co.*, 364 F.3d 789, 802 (6th Cir. 2004); *but see Robert Mayers v. Donal Campbell*, No. 03-5723, 2003 WL 23140061, at **2 (6th Cir. Dec. 15, 2003) (concluding that a fifty-six day delay to receive back pay following the reversal of a suspension did not constitute a materially adverse employment action).

Plaintiff's pay was not affected by the difference between her own entry and Phillips' entry and that Plaintiff was not disciplined for completing what Phillips believed to be an incorrect time card. It is also undisputed that Phillips addressed other employees' attendance and lateness similarly to how she treated Plaintiff.  Accordingly, it is RECOMMENDED that Plaintiff did not suffer a materially adverse action when Phillips recorded her time on duty in this manner.

### ii.   *Severe or Pervasive Retaliatory Harassment*

Plaintiff may also meet her *prima facie* case if she demonstrates that there is a genuine issue of material fact as to whether she endured severe or pervasive retaliatory harassment by a supervisor.  However, she likewise fails to do so.  As already stated, Robinson is a co-worker, not a supervisor.  As for Phillips' brief delay to process her FMLA leave appropriately, it is undisputed that this was resolved in Plaintiff's favor.  As for Phillips' recording of her time, it is undisputed that Phillips did so in order for the recording to be accurate, that it did not affect her pay, and that she was not subjected to discipline for providing what Phillips believed to be an inaccurate time card.  These two isolated incidents with no adverse consequences to Plaintiff are insufficient to create a genuine issue of material fact as to whether Plaintiff was subjected to severe and pervasive retaliatory harassment.  Accordingly, it is RECOMMENDED that Plaintiff has failed to satisfy her prima facie case on her claim of Title VII Retaliation.   Thus, it is RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED as to Plaintiff's Title VII Retaliation Claim.

### j.   *Hostile Work Environment*

Finally, Plaintiff generally alleges that she was subjected to a "hostile work environment" and/or harassed because of her disability, her age, and/or in retaliation for her protected activity. To establish a claim for hostile work environment based upon disability, age, or participating in

protected activity, a plaintiff must demonstrate as follows: (1) the employee was disabled, above age forty, or had participated in activity protected by Title VII, respectively; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based upon disability, age, or participation in protected activity; (4) the harassment had the effect of unreasonably interfering with the plaintiff's work performance by creating an intimidating, hostile, or offensive working environment; and, (5) there is some basis for employer liability, such as the employer failed to take reasonable care to prevent and correct any harassing behavior. *Clay v. United Parcel Srvs., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007)); *Willey*, 20 Fed. Appx. at 406 (citing *Williams v. Gen. Motors Corp.*, 187 F.3d 553, 560-61 (6th Cir. 1999)) (retaliatory hostile work environment); *Crawford v. Medina General Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996) (hostile work environment based upon age under the ADEA); *Plautz*, 156 Fed. Appx. at 818 (hostile work environment based upon disability under the Rehabilitation Act).

Actionable harassment exists if the workplace is permeated with discriminatory intimidation, ridicule, and insult that is "sufficiently severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Trotter*, 699 F. Supp. 2d at 1054 (citation omitted); *Thomas v. Grinder & Haizlip Const.*, 547 F. Supp. 2d 825, 831 (W.D. Tenn. 2007) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001)). "Workplace conduct is not measured in isolation; instead, whether an environment is sufficiently hostile or abusive must be judged by looking at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Clark County*, 532 U.S. at 270-71. Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and

conditions of employment, *Thomas*, 547 F. Supp. 2d at 831 (citing *Clark County*, 532 U.S. at 270-71).  The standard for whether an employee has been subjected to a hostile work environment has both an objective and subjective component.  *Trotter*, 699 F. Supp. 2d at 1054 (citing *Newman v. Federal Express Corp.*, 266 F.3d 401, 405 (6th Cir. 1999)).

Beginning with Plaintiff's claims that she was subjected to a hostile work environment on the basis of age, a claim which stems from the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. 621, *et seq*., Plaintiff's Complaint does not state that she seeks to raise any claim under ADEA.  Other than stating her age and birth year, Plaintiff's Complaint does not include any other allegations relating to her age.  Of central importance at the summary judgment stage, Plaintiff has not provided any evidence in response to this motion that indicates her age or would support a claim that any hostile work environment was based upon it.   Accordingly, it is RECOMMENDED that Plaintiff's claim for hostile work environment based upon age fails as a matter of law.

As to Plaintiff's claim that she was subjected to a hostile work environment based on her participation in protected activity, Defendant does not contest that Plaintiff previously engaged in activity protected by Title VII when she filed prior EEO Complaints or that Phillips was aware of one of those instances of protected activity.  Plaintiff alleges that the following incidents constitute the unwelcome harassment:  Robinson throwing a hand-stamper at her; the request for further documentation of her FMLA leave during a snowstorm; Phillips' alteration of her recorded time in the leave system; and, other employees being given more leniency for eating on duty while she was subjected to stricter requirements

With respect to Robinson's actions, Plaintiff's Complaint states that he threw the hand-stamper at her because he believed she placed it on his desk, not because he sought to harass her based upon protected activity.  There is no evidence in the record regarding this incident such that

it could give rise to any actionable claim.  With respect to the processing of her FMLA leave, it is undisputed that the former was resolved swiftly in Plaintiff's favor.  With respect to the recording of her time on September 21, 2013, it is undisputed that Phillips believed she was accurately recording Plaintiff's time based upon the time she personally witnessed her arriving, that Plaintiff's pay was not affected by the one-minute time discrepancy, and Plaintiff was not disciplined for completing what Phillips believed to be an inaccurate time record.  Additionally, it is undisputed that Phillips addressed other employees' attendance and lateness similarly to how she treated Plaintiff.

With respect to the rules regarding while eating on shift, Plaintiff's Complaint alleges that Phillips was "hostile" to her "for eating a granola bar and on another occasion two small cookies . . ."  (D.E. #1-2 at PageID 14).  Plaintiff alleges that "Phillips allowed food such as doughnuts, cookies, cupcakes, brownies and candy to be placed on her desk" and that everyone else was "eating and drinking on the floor."  (*Id.*)  It is undisputed that plant-wide rules were developed prohibiting employees from having food "on the workroom floor while working."  It is undisputed that Phillips told Plaintiff on one occasion to refrain from eating a granola bar while attempting to stamp and sort mail and on another occasion to discontinue eating cookies at her case.  Plaintiff was instructed to do so on both occasions because attempting to eat while working was "counter-productive" as she could not use both hands.  Plaintiff was not disciplined for either incident, and Phillips handled situations in a similar manner when she saw other employees with food on the workroom floor.  These two isolated incidents, which were handled in accordance with company policy and consistent with the manner in which other employees were treated, cannot be said to rise to the level of unreasonably interfering with the employee's work performance and creating an objectively intimidating, hostile, or offensive work environment.   Accordingly, it is

RECOMMENDED that Plaintiff's claim that she was subjected to a hostile work environment in retaliation for her participation in protected activity fails as a matter of law.

Furthermore, for the same reasons as set forth above with respect to whether Plaintiff was subjected to a retaliatory hostile work environment, it is RECOMMENDED that Plaintiff was not subjected to a hostile work environment because of her disability when Robinson threw the hand stamper, when she was required to provide additional documentation to take FMLA leave during a snowstorm, when Phillips recorded her leave on September 21, 2013, or when she was asked twice not to eat food while on duty. The only issue Plaintiff's Complaint mentions relating to her disability that was not addressed with respect to whether she suffered a retaliatory hostile work environment is that she was denied overtime that was provided to "all able bodied employees." However, there is no genuine dispute of material fact before the Court that she was denied any overtime for which she was eligible; on the contrary, the record reflects that she was not allowed to work overtime only when it exceeded her limited-duty restrictions and/or was not permitted by the CBA. Thus, Plaintiff cannot sustain a claim of hostile work environment based on disability due to denial of overtime. Accordingly, it is RECOMMENDED that Plaintiff's claim for hostile work environment based upon her disability fails as a matter of law.

**IV.     Conclusion**

For the reasons set forth herein, it is RECOMMENDED that Defendant's Motion for

Summary Judgment be GRANTED.

**SIGNED** this 18th day of December, 2020.

s/ Charmiane G. Claxton
CHARMIANE G. CLAXTON
UNITED STATES MAGISTRATE JUDGE

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT.  28 U.S.C. § 636(b)(1)(C).  FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**